IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MARY R., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 4:25-cv-985-BN |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

This case filed under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security (the "Commissioner") is proceeding before the undersigned United States magistrate judge for all purposes. *See* N.D. TEX. SPEC. ORD. NO. 3-350.

The Commissioner denied Plaintiff Mary R.'s claim for disability insurance benefits, and Plaintiff argues that the Commissioner's decision should be reversed, and this case remanded for further proceedings, because (1) the residual functional capacity ("RFC") is not supported by substantial evidence, since the administrative law judge ("ALJ") failed to develop the record and should have ordered a consultative examination and (2) the ALJ improperly assessed Plaintiff's credibility. *See generally* Dkt. No. 16. The Commissioner filed a brief in response, and Plaintiff replied. *See* Dkt. Nos. 22 & 23.

And, for the following reasons, the Court reverses the hearing decision and remands this case to the Commissioner for further proceedings.

## Legal Standards

"To qualify for Title II disability-insurance benefits, a claimant must prove a 'disability,' meaning a 'medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.'" *Hicks v. Comm'r, Soc. Sec. Admin.*, No. 24-10826, 2025 WL 1166147, at *1 (5th Cir. Apr. 22, 2025) (per curiam) (quoting *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) (in turn citing 42 U.S.C. § 423(d)(1)(A))).

"The Commissioner employs a sequential, five-step inquiry to determine whether a claimant is disabled," *id.* at *2 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)), under which the considerations are:

> (1) whether the claimant is "doing substantial gainful activity;" (2) whether the claimant has "a severe medically determinable physical or mental impairment" of sufficient duration; (3) if so, whether her impairment meets or equals a listing in the regulatory appendix; (4) if not, whether the claimant can perform her "past relevant work" given her "residual functional capacity" (RFC); and (5) if not, whether the claimant can adjust to other work given her RFC, age, education, and work experience.

*Id.* at *2 n.5 (citations omitted).

"The claimant bears the burden of proof until the last step, when the burden shifts to the Commissioner." *Id.* at *2 (citing *Jones v. O'Malley*, 107 F.4th 489, 492 (5th Cir. 2024)).

And a federal court's review of the Commissioner's "determinations 'is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence.'" *Id.* (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th

Cir. 2012) (per curiam); citing 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.")).

"Substantial evidence means 'more than a scintilla, but it need not be a preponderance.'" *Id.* (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); citing *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) ("[Substantial evidence] means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)))).

**Analysis**

Plaintiff first argues that the ALJ's RFC is not supported by substantial evidence where the ALJ failed to develop the record by ordering a consultative examination.

There is no doubt that "[a]n 'ALJ is responsible for determining an applicant's residual functional capacity.'" *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)); *accord Garrett R. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-cv-829-D-BK, 2023 WL 5418301, at *3 (N.D. Tex. July 20, 2023) ("The RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence." (citing *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam))), *rec. adopted*, 2023 WL 5415283 (N.D. Tex. Aug. 22, 2023).

Before determining the RFC, "[a]n 'ALJ has a duty to develop the facts fully

and fairly relating to an applicant's claim for disability benefits." *Webster*, 19 F.4th at 720 (quoting *Ripley*, 67 F.3d at 557).

But "[a] consultative examination is required to develop a 'full and fair record' only if 'the record establishes that such an examination is necessary to enable the [ALJ] to make the disability decision.'" *Id.* (quoting *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016) (in turn quoting *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987))).

And, so, there is no "*per se* rule" that a consultative examination is required. *Willis v. Kijakazi*, No. 22-20609, 2023 WL 4015174, at *3 (5th Cir. June 14, 2023) (per curiam).

Reviewing courts "instead rely on the duty of an ALJ 'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.'" *Id.* (quoting *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001)).

As Plaintiff puts it on reply, she does "not argue that an ALJ *per se* requires a medical opinion to formulate an RFC." Dkt. No. 23 at 1-2.

Rather, Plaintiff argues that, on this record, one was necessary, "where state agency consultants expressly declined to assess Plaintiff's mental functioning, where over 30 pages of mental health treatment records were submitted only after reconsideration, where the ALJ himself found four Paragraph B mental limitations, and where Plaintiff was diagnosed with severe depression and prescribed Lexapro." *Id.* at 2 (citation omitted).

As set out in the opening brief, Plaintiff further explains that,

> when reviewing the medical evidence at the initial consideration and reconsideration stage, the state agency medical consultants did not assess Plaintiff's mental RFC. Tr. 63-66; 67-72. The state agency medical consultants had the benefit of reviewing approximately 508 pages of medical evidence. Tr. 374-882. However, an additional 34 pages of medical evidence was submitted after both the initial consideration and reconsideration, and those additional records indicated treatment for mental health conditions. Tr. 883-917. On August 20, 2024, Plaintiff presented to Viola Pitts Clinic, complaining of depression, anxiety, diabetes, and knee pain. Tr. 885. The provider diagnosed her with anxiety and depression and prescribed Lexapro, 10mg, one per day. Id. The depression screening questionnaire indicates that Plaintiff has severe depression. Tr. 894. Furthermore, in the ALJ's analysis of Plaintiff's mental impairments under "Paragraph B," he found that Plaintiff had the following: (1) mild limitation in understanding, remembering, or applying information; (2) mild limitation in interacting with others; (3) mild limitation in concentrating, persisting, or maintaining pace; and (4) mild limitation in adapting or managing oneself. Tr. 29-31. Thus, there was evidence that revealed possible limitations related to Plaintiff's mental health impairments, and clarification on those mental health impairments and resulting limitations was clearly needed, which a consultative examination would have done. However, the record is devoid of any assessment from a medical source that reviewed the entire record concerning the severity of these impairments and how it relates to Plaintiff's mental RFC. Therefore, the ALJ's reliance on his own lay assessment of the medical records to estimate the severity of Plaintiff's impairments is legal error.
>
> The issue here is not a matter of completeness of the record, but rather a matter of interpretation of that record, as Plaintiff submitted medical records after both the initial and reconsideration denial. As a result, no medical expert assessed the entire treatment records produced, and this left the ALJ in the improper role of playing doctor.

Dkt. No. 16 at 6-7.

So, according to Plaintiff, the failure of a medical professional to review the "approximately 34 pages of post-reconsideration mental health records, including the August 20, 2024, Viola Pitts Clinic visit at which Plaintiff was diagnosed with anxiety and depression, scored in the severe range on the depression screening questionnaire, and was prescribed Lexapro 10 mg daily" and "translate[] them into functional terms"

has caused a "*Ripley* gap." Dkt. No. 23 at 2-3 (citation omitted).

In other words, "[w]here state agency consultants are not given an opportunity to review medical evidence establishing an impairment, and where no other medical source weighs in on functional limitations, the ALJ is left to translate raw clinical data into vocational restrictions on his own." *Id.*

The Commissioner responds in part that,

> [a]fter considering all relevant evidence, the ALJ reasonably concluded that Plaintiff did not have a severe mental impairment imposing RFC limitations. He acknowledged that the state agency consultants found there was insufficient evidence to evaluate the claim at the initial determination and did not identify a mental condition upon reconsideration, but there was sufficient evidence to do so at the hearing level.

Dkt. No. 22 at 7 (citations omitted). "Here, as Plaintiff admits, there was no shortage of medical evidence; instead, she wanted someone other than the ALJ to assess her RFC. (Pl. Br. 7). But that is the ALJ's responsibility alone. 20 C.F.R. § 404.1546(c). What Plaintiff characterizes as the ALJ 'playing doctor' is the ALJ properly evaluating the medical evidence to determine Plaintiff's capacity for work." *Id.* (citation omitted).

The Court cannot agree with the Commissioner.

"*Ripley*'s proposition [is] that reversible error lies where the 'record does not clearly establish' how an applicant's condition affects her ability to work." *El Neil v. Comm'r of Soc. Sec.*, No 4:23-cv-473-BP, 2024 WL 265870, at *6 (N.D. Tex. Jan. 24, 2024) (quoting *Thornhill v. Colvin*, No. 3:14-cv-335-M, 2015 WL 232844, at *10 (N.D. Tex. Dec. 15, 2014) (in turn quoting *Ripley*, 67 F.3d at 557), *rec. accepted*, 2015 WL 232844 (N.D. Tex. Jan. 16, 2015)).

Like in *El Neil*, the ALJ here found that Plaintiff suffered from non-severe mental impairments. *See* Dkt. No. 14-1 at 33 (Tr. 29).

Like Plaintiff, El Neil then argued that,

> given her mental limitations and the lack of persuasive medical opinions of the effect of these limitations on her ability to work, the record contained insufficient evidence to support the ALJ's RFC, leaving her to rely on her own guesswork. El Neil contends that the record does not clearly establish the effect El Neil's condition had on her ability to work. Thus, the ALJ improperly used her lay interpretation of raw medical data to formulate her RFC. El Neil further argues that the ALJ failed to develop the record sufficiently and should have sought a functional opinion or ordered a consultive examination. She claims that this was harmful error.

*El Neil*, 2024 WL 265870, at *3.

And, as in *El Neil*, here too "[t]he record does not clearly establish the effects of [Plaintiff's] mental impairments on her ability to work," so "[s]ubstantial evidence does not support the ALJ's mental RFC assessment, just like in *Ripley*." *Id.* at *5; *see also Thornhill*, 2015 WL 232844, at *10 ("While the ALJ may choose to reject medical sources' opinions, he cannot then independently decide the effects of Plaintiff's mental impairments on her ability to perform work-related activities, as that is prohibited by *Ripley*, even if the ALJ believes he is simply giving Plaintiff the benefit of the doubt as to what limitations might apply. Rather, at that point, it became incumbent upon the ALJ to obtain an expert medical opinion about the types of work tasks that Plaintiff could still perform given her impairments. The Court therefore cannot agree that the evidence substantially supports the conclusion that Plaintiff was not disabled because the Court is unable to determine the effects of Plaintiff's conditions on Plaintiff's ability to perform work."); *J.S.B. v. Comm'r, Soc. Sec. Admin.*, No. 3:25-

cv-687-BR, 2026 WL 40874, at *7 (N.D. Tex. Jan. 6, 2026) ("The ALJ in this case committed a *Ripley* error by relying on her own lay understanding of the medical diagnoses and raw medical data to assess an RFC without substantial evidence.").

Relatedly,

> ALJs enjoy complete discretion regarding whether to order a consultative examination. But in circumstances like this, if the ALJ elects not to do so, she must refer to expert opinion evidence to support the limitations that she imposes or chooses not to impose. ALJs have discretion as to the means, but not the ends.
>
> Developing the record prevents judges from playing the role of doctor, a role for which they are generally ill-equipped. While the ALJ could depart from the relevant medical opinions, it then became incumbent upon the ALJ to obtain an expert medical opinion to fill the gap.

*El Neil*, 2024 WL 265870, at *6 (cleaned up).

And the Court concludes that the ALJ's failure to develop the record as to the effects, if any, of the mental impairments identified on Plaintiff's ability to perform work-related activities constitutes reversible error where Plaintiff has identified evidence that "indicates that a consultative examination might have produced evidence supporting greater limitations than those assessed in Plaintiff's RFC." *J.S.B.*, 2026 WL 40874, at *8; *see also El Neil*, 2024 WL 265870, at *6 ("[T]he ALJ's omission of mental limitations without the benefit of expert medical opinion necessarily affected El Neil's substantive rights. The absence of a medical opinion addressing El Neil's ability to work casts doubt on the ALJ's decision. In similar cases where a medical opinion did not support the ALJ's limitations, courts have found reversible error. Further, if the RFC would have afforded El Neil mental limitations, she may not have been able to return to her PRW. Thus, the Court must reverse the

Commissioner's decision no matter how understandable and reasonable the imposed limitations may be." (cleaned up)); *cf. Alondra E.F. v. Kijakazi*, No. 3:20-cv-2787-BN, 2022 WL 605301, *5 (N.D. Tex. Mar. 1, 2022) ("[H]aving determined that the SAMC opinions did not accurately capture Plaintiff's current mental functional limitations, the ALJ did not request an updated medical opinion that would have accounted for changes in Plaintiff's mental functioning, and instead relied on his own lay interpretation of Plaintiff's ability to work. Had he obtained an updated opinion, his determination of Plaintiff's RFC would, conceivably, have included greater limitations. This, in turn, could have altered the ALJ's findings at step five, at which the Commissioner bears the burden to identify gainful employment available in the national economy that Plaintiff can perform, and at which the ALJ determined Plaintiff was not disabled.").

**Conclusion**

The hearing decision is reversed, and this case is remanded to the Commissioner of Social Security for further proceedings.

SO ORDERED.

DATED: August 31, 2026

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE